### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### AT COVINGTON

| | | |
|---|---|---|
| MARIO KIRKENDALL | : | Case No. 2:22-cv-00026-DLB-CJS |
| | : | |
| Plaintiff, | : | Judge David L. Bunning |
| | : | Magistrate Candace J. Smith |
| v. | : | |
| | : | |
| BOONE COUNTY BOARD OF EDUCATION | : | |
| | : | |
| | : | |
| Defendant. | : | |

---

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

*/s/ Jon B. Allison*
Kelly Mulloy Myers (KY Bar #83452)
Jon B. Allison-Admitted *Pro Hac Vice*
(OH Bar No. 0073955)
Trial Attorneys for Plaintiff
Freking Myers & Reul LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*kmyers@fmr.law*
*jallison@fmr.law*

## I.     INTRODUCTION

In July 2019 Plaintiff Mario Kirkendall was hired as the Athletic Director for Ryle High School.  The position that was posted was that of Athletic Director. It was a full-time job as was testified to by Principal Matthew Turner. The duties of the position regularly required working late into the evening and on weekends. Turner told Plaintiff that he would not have instructional teaching responsibilities.

Plaintiff worked the first year without issue. The COVID-19 pandemic began in early 2020. At the beginning of the 2020/2021 school year, Plaintiff utilized FMLA leave – specifically under the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), an expansion of the FMLA during the pandemic. Defendant discouraged Plaintiff from taking leave, but did grant it. Defendant interfered with Plaintiff's leave by requesting that he perform various tasks while he was on leave.

When Plaintiff returned from FMLA leave, the conditions of his employment were significantly changed.  Defendant changed Plaintiff's start time by more than 2 hours, from 9:50 a.m. to 7:30 a.m.  This was a significant change for Plaintiff both because he still had his evening duties and because he had child-care responsibilities in the a.m. of which Defendant had been aware prior to mandating the change. Additionally, there seemed to be no reason for the change. Also, Plaintiff was tasked with contacting struggling students. While it is true that others were asked to do this as well, Plaintiff was assigned 6-10 times as many students as others. Defendant also assigned Plaintiff teaching responsibilities. Additionally, Defendant began to scrutinize Plaintiff's job performance in ways it had not before.

Plaintiff was concerned that all of the changes would interfere with his Athletic Director duties. He was also concerned that all of the changes violated the FMLA which provides that once

an employee returns from leave, the employer must return him to the same or equivalent position with similar employment conditions and responsibilities, including the same work schedule. When Plaintiff raised legitimate questions about his FMLA rights, Defendant placed him on leave and subsequently terminated his employment. Witnesses for Defendant agreed that they did not even consider what the FMLA required when deciding to terminate Plaintiff.

Plaintiff was the only African-American administrative employee at Ryle High School. During his employment Plaintiff was subjected to racially-insensitive comments. Following the termination of Plaintiff, he was replaced with a Caucasian.

Plaintiff has asserted claims of FMLA violations, breach of contract, and race discrimination. Because Plaintiff can establish the *prima facie* elements of each of his claims as well as establish pretext, Defendant's motion for summary judgment should be denied.[1]

## II.     FACTS

### A.  Plaintiff Was Hired As The Athletic Director

Plaintiff Kirkendall was hired by Defendant in July 2019 as Athletic Director for Ryle High School. (Doc # 1-2, PageID# 11; Doc # 26, Kirkendall Depo., Page ID# 441). The position was posted as that of Athletic Director. (Doc # 34, McArtor Depo., PageID# 708, 14:11-14). Matthew Turner (Principal at the time and now Superintendent) testified that the Athletic Director position was a full-time position and that he expected Plaintiff to spend all of his time performing Athletic Director responsibilities. (Doc # 35, Turner Depo., PageID# 735, 9:19-21; Page ID# 747, 21:12-14; PageID# 748, 22:13-24; PageID# 749, 23:2-8). The understanding was that Plaintiff's job duties were those of Athletic Director. (*Id.* at PageID# 756, 30:19-24; PageID# 757, 31:1).

---

[1] Plaintiff does not contest summary judgment with respect to Plaintiff's KCRA and Title VII retaliation claims.

Plaintiff was told that his teacher contract was a formality. (Doc # 26, PageID# 119, 44:17-19; Doc # 34, Page ID# 754, 28:7-12). All employees of Defendant sign teaching contracts, but some perform no teaching responsibilities. (*Id.* at PageID# 232, 157:19-25; PageID# 233, 158:1; Doc # 34, Page ID# 754, 28:7-12). Plaintiff did cover lunchroom duty, in school suspension and study hall. (*Id.* at PageID# 127, 52:11-20). These duties did not include classroom instruction. (*Id.*)

Plaintiff's workday started at 9:50 a.m. (*Id.* at PageID# 127, 52:19-20). Plaintiff was responsible for dropping his kids off at school and came into work after doing so. (*Id.* at PageID# 275, 200:1-3). Plaintiff's day would often end late in the evening, generally in connection with duties with respect to various athletic events. (*Id.* at PageID# 133, 58:5-7.)

When the COVID-19 pandemic hit in March 2020, Plaintiff continued to perform various Athletic Director duties. (*Id.* at PageID# 136, 61:10-24; PageID#, 239-240, 164:12-18, 165:1-7). Plaintiff worked the 2019-2020 school year without issue.

### B. Defendant Interfered With Plaintiff's Leave

At the beginning of the 2020-2021 school year, Plaintiff requested FMLA leave in connection with his parental responsibilities during the COVID-19 pandemic. (*Id.* at PageID# 158, 83:1-3; PageID# 162, 87:18-21). Plaintiff's spouse was a nurse at Cincinnati Children's Medical Center and was considered an essential worker. (*Id.* at PageID# 157, 82:21). With local school districts moving to remote instruction at that time, Plaintiff did not have other childcare options. (*Id.*). Through the temporary expansion of the FMLA, Plaintiff was entitled to this leave.

Plaintiff's leave began on September 21, 2020. (*Id.* at PageID# 167, 92:3-5). Plaintiff's leave was intermittent for the first two weeks while he helped transition a temporary replacement. (*Id.* at PageID# 165, 90:12-16). After two weeks, Plaintiff took continuous FMLA leave until December 4, 2020. (*Id.* at PageID# 186, 111:14-17).

4

Matt Shafer, Principal, told Plaintiff he would rather Plaintiff rearrange his schedule instead of taking leave. (*Id.* at PageID# 399, 324:3-4). Shafer also suggested Plaintiff work the first half of the day instead of utilizing leave. (*Id.*). While Plaintiff was out on leave, Shafer made a number of requests of Plaintiff to perform various tasks, including coordinating a soccer tournament and attending other events. (*Id.* at PageID# 168, 93:18-20; Page ID# 170, 95:14-23). Shafer asked Plaintiff to work on the weekend and called as late as 10 p.m. (*Id.* at PageID# 169, 94:1-7; Page ID# 170, 95:10-23).

Defendant already had access to everything it needed to avoid having to ask Plaintiff to perform work while he was on leave. (*Id.* at PageID# 182, 107:13-19). When Shafer asked, Plaintiff responded. (*Id.* at PageID# 218, 143:8-11). Plaintiff was, however, not compensated for doing so. (*Id.* at PageID# 175, 100:15-22). He had been told that he would be compensated for work performed. (*Id.* at PageID# 195, 120:3-16). Plaintiff questioned Human Resources why he was not compensated for the days he performed substantive work. (*Id.* at PageID# 175, 100:15-22). Plaintiff was told he could stop responding to the requests to perform work. (*Id.* at PageID# 171, 96:14-19). With respect to the pay issue, however, Plaintiff was informed that he would not be paid because he was not given permission to work from home, even though he was responding to work requests from Shafer. (*Id.* at PageID# 199, 124:7-12).

### C. Defendant Significantly Changed Plaintiff's Duties Upon His Return To Work

As Plaintiff made plans to return to work, Shafer told him that his return would be contingent upon him agreeing to significant changes to the conditions of his employment. (*Id.* at PageID# 209, 134:1-10). Plaintiff's start time was moved up from 9:50 a.m. to 7:30 a.m. and he was told that if he did not make it in by that time he would have to use his personal days or sick time. (*Id.* at PageID# 274, 199:23-24; Page ID# 725, 200:5-10). This was a significant change for

Plaintiff because of his regular responsibilities in the evenings and because of his responsibilities with respect to getting his children to school.  (*Id.* at PageID# 275, 200:17-22).

Athletics were resuming in January 2021. (*Id.* at PageID# 240, 165: 13-18) Plaintiff was expected to be performing his AD duties late into the evening, including tear down after athletic competitions ended. (*Id.* at PageID# 272, 197:24). Plaintiff's new start time would add over two hours to his day.  (*Id.* at PageID# 275, 200:1-10). And there seemed to be no reason for this change.

Plaintiff would also be required to teach study skills classes. (*Id.* at., PageID# 266, 191:22-25). Additionally, he was instructed to contact/monitor failing students. (*Id.* at PageID# 230, 155:3-10).  While it is true that others were asked to do this as well, Plaintiff was assigned 41 students to monitor. (*Id.* at PageID# 397, 322:18-24; PageID# 402, 327:12-22). Other staff members in Plaintiff's group were assigned between 4 and 7 students each. (*Id.*) Plaintiff expressed concern that the additional duties would interfere with his ability to perform his Athletic Director responsibilities. (*Id.* at PageID# 320, 245:7-11).

### D.  Defendant Began Scrutinizing Plaintiff's Work Following His Return From Leave

Beginning in January 2021, when Plaintiff was performing AD duties, but before students returned in person, Defendant began to scrutinize Plaintiff's performance. (*Id.* at PageID# 245, 170:12-21). Defendant claimed that Plaintiff was not effectively communicating with coaches. (*Id.*) Defendant claimed that Plaintiff was not completing tasks that were allegedly his responsibility. (*Id.* at PageID# 319, 244:10-21). Prior to his leave, Plaintiff had not received similar criticisms of his performance. (*Id.* at PageID# 245, 170:12-17). Plaintiff raised concerns about these new criticisms both verbally and via email. (*Id.* at Page ID# 490).

### E.  Plaintiff's Termination

Over the course of the first couple of weeks of January, Plaintiff raised concerns via email and during meetings with Principal Shafer regarding the changes to his job duties, the impact on performing his Athletic Director Duties, and how the changes violated the FMLA. (*Id.* at PageID# 483, 490).

Students returned on January 19, 2021. (*Id.* at PageID# 321, 236:23-25). Shafer demanded that Plaintiff accept the changes to his employment or he would be put on leave. (*Id.* at PageID# 346, 271:19-25). Plaintiff reiterated that he believed his FMLA rights were being violated. (*Id.* at PageID# 347, 272; Page ID# 348, 273:1-25; Page ID# 349, 274). Shafer placed Plaintiff on leave. (*Id.* at PageID# 349, 274:16-25).

A disciplinary hearing took place on January 27, 2021. (*Id.* at PageID# 500). Defendant did not even consider the requirements of the FMLA. (Doc # 34, PageID# 718, 24:22-24; PageID# 719, 25:1-15; Page ID# 722, 28:8-20; Doc # 35, PageID# 786, 60:11-18). Both Turner and Eric McArtor, Deputy Superintendent, testified that the FMLA and its requirements were not considered when discussing the changes to Plaintiff's position or his termination. (*Id.*) Without considering Plaintiff's FMLA entitlements, Defendant terminated Plaintiff's employment effective January 29, 2021. (Doc # 26, PageID# 356, 281:22-25).

### F.  Defendant Treated Plaintiff Differently On The Basis Of His Race

Plaintiff was the only African-American employee in an administrative role at Ryle High School. (*Id.* at PageID# 382, 307:13-15). Plaintiff was also the only African-American AD within Boone County Schools. (*Id.*) Plaintiff testified that he was concerned the scrutiny of him was due to the perception that he was a "lazy black male." (Doc # 26, PageID# 398, 323:14-20). Plaintiff was told that no one had taken leave like this before. (*Id.* at PageID# 399, 324: 1-4).

Throughout his employment, Defendant subjected Plaintiff to racially insensitive comments. (*Id.* at PageID# 142, 67:20-25). Shafer told Plaintiff in the presence of other staff that it looked like Shafer went to Sycamore and Plaintiff went to Princeton. (*Id.* at PageID# 376, 301:3-4). Plaintiff testified that the student body at Sycamore is predominately Caucasian while the student body at Princeton is predominately African-American. (*Id.* at 16-17). Shafer told Plaintiff that he wanted Plaintiff to report to Assistant Principal Tony Pastura because he was "his boy." (*Id.* at. PageID# 377, 302:11-17). Turner told Plaintiff that he learned how to talk to Black to non-white students. (*Id.* at PageID# 380, 305:15-24).

Turner told Plaintiff that he came off as "mean" after a Caucasian employee confronted Plaintiff about a position she wanted. (*Id.* at PageID# 138, 63:6-9). Even though she was the aggressor, Plaintiff was treated as if he was at fault. (*Id.*) Plaintiff reported difficulty with a member of the community who volunteered at various athletic events. (*Id.* at PageID# 405, 330:22-25; Page ID# 406, 331:1-5). Turner told Plaintiff to turn the other cheek. (*Id.* at PageID# 406, 331:1-5).

After he was terminated, Defendant replaced Plaintiff with Keaton Belcher, a Caucasian male. (Doc # 34, PageID# 787, 61:13-17).

## III.    ARGUMENT

### A.  Legal Standard

Summary judgment is only proper when no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

When ruling on summary judgment, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The non-moving party's evidence should be accepted as true, with all reasonable inferences to be drawn in his favor. *Anderson v.* 477 U.S. at 255. The trial court cannot resolve factual disputes by weighing conflicting evidence. *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 661 (6th Cir. 2013). Rather, if credibility determinations are required to resolve a disputed issue, the court must deny the motion and leave such determinations to the jury. *Id.; Anderson*, 477 U.S. at 255. When the defendant's motivation or intent is at issue, summary judgment is rarely appropriate. *See Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001) (observing "that question—i.e. the employer's motive—is rarely susceptible to resolution at the summary judgment stage" of an employment discrimination case).

### B. FMLA Violations

Plaintiff has asserted claims under the FMLA alleging both interference with his FMLA rights and unlawful retaliation for the exercise of his FMLA rights. The Sixth Circuit recognizes the "entitlement" or "interference" FMLA theory under 29 U.S.C. § 2615(a)(1), and the "discrimination" or "retaliation" theory under 29 U.S.C. § 2615(a)(2). *Tillman v. Ohio Bell Tel. Co.,* 545 F. App'x 340, 341 (6th Cir. 2013).

The FMLA entitles qualifying employees with up to twelve weeks of job-protected leave. 29 U.S.C. § 2612(a)(1)(D). Under the Families First Coronavirus Response Act, the FMLA was temporarily amended. *See* 29 C.F.R. § 826.130. The EFMLEA expanded the qualifying reasons to take leave, including to care for minor children when the childcare provider is unavailable due to the COVID-19 public health emergency. *See* 29 U.S.C. §§ 2612(a)(1)(F) & 2620(a)(2)(A)-(B).

9

Because the temporary expansion was enforced through the FMLA, its substantive entitlements and requirements were the same. *See* 29 C.F.R. § 826.151; *see also* 29 U.S.C. §§ 2615 & 2617. "It is unlawful 'for an employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA].'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).

FMLA interference and retaliation claims based on indirect evidence follow the *McDonnell Douglas* burden shifting framework. *Id.* at 508; *Tillman*, 545 F. App'x at 341. Under this framework, the plaintiff must first establish his *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Once the plaintiff establishes his *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* If established, the plaintiff is tasked with the final burden of presenting some evidence that the asserted reason is not the real one. *Id.* "[T]o survive summary judgment a plaintiff need only produce enough evidence to support a *prima facie* case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (quoting *Blair v. Henry Filters*, 505 F.3d 517, 532 (6th Cir. 2007)).

### 1.  Plaintiff Has Established A *Prima Facie* Case Of Interference Under The FMLA

To prevail on an FMLA interference theory, the Plaintiff must show that (1) he was an eligible employee; (2) the defendant was a covered employer under the FMLA; (3) he was entitled to FMLA leave; (4) he gave defendant notice of his intention to utilize FMLA leave; and (5) defendant denied his FMLA rights to which he was entitled. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

FMLA interference is not limited to whether the employer granted the leave or not. Rather, it includes situations where the employer interfered with the right to leave as well as the employee's reinstatement following the leave. *Tillman*, 545 F. App'x at 341. The inquiry into whether the employer interfered with the plaintiff's right to FMLA leave is not concerned with the employer's motive but instead looks to whether the employer provided the FMLA entitlements. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 511 (6th Cir. 2006). If an employer interferes with the FMLA right to leave or to reinstatement following the leave, a violation has occurred. *Arban v. West Pub. Corp.*, 345 F.3d 390, 405 (6th Cir. 2003).

Defendant does not dispute the first four elements of Plaintiff's FMLA interference claim. To the extent that Defendant claims Plaintiff did not take FMLA leave, Plaintiff has demonstrated that his leave was covered under the FMLA as it was temporarily amended through the EFMLEA. *See* 29 U.S.C. §§ 2612(a)(1)(F) & 2620(a)(2)(A)-(B).

As to the fifth element, the evidence demonstrates that Defendant interfered with Plaintiff's leave by discouraging him from taking leave and asking him to perform various tasks while on leave. Additionally, Defendant interfered with Plaintiff's FMLA rights by making significant changes to his duties following his return from leave and terminating his employment.

### a. Defendant Interfered With Plaintiff's Right To FMLA Leave By Discouraging Him From Taking Leave And By Requiring Him To Perform Substantive Work While On Leave

The FMLA regulations provide that "interfering with" the exercise of an employee's rights includes "discouraging an employee from using [FMLA] leave." *Arban*, 345 F.3d at 402 (quoting 29 C.F.R. § 825.220(b)). When Plaintiff expressed his intention to take leave due to his childcare responsibilities, Defendant discouraged him by asking him to take a modified schedule, including coming in early, instead of utilizing his right to FMLA leave. (*Id.* at PageID# 399, 324:3-7).

11

Requiring an employee to work while on leave is textbook FMLA interference. *Arban*, 345 F.3d at 401. Courts within the Sixth Circuit have held that an employer violates the FMLA when it requires an employee to continue performing substantive work while on FMLA leave, rather than responding to *de minimus* requests for passing on information or institutional knowledge. *See Tilley v. Kalamazoo Cty. Rd. Comm'n*, 654 F. Appx. 675, 680 (6th Cir. 2016) (under certain circumstances, multiple phone calls from an employer and demands to complete more than simple tasks could rise to the level such that an employee's FMLA leave becomes unjustifiably disrupted and thereby discouraged); *see also Folts v. S. Lyon Senior Care & Rehab Ctr., L.L.C.,* No. 10-CV-13774, 2012 U.S. Dist. LEXIS 39792, at *18 (E.D. Mich. Mar. 23, 2012) (declining to enter summary judgment in favor of employer who called employee and asked her to return to work for two days because no one was available to cover her duties). Other courts interpreting the FMLA have held the same. *See Zahler v. Empire Merchs., LLC*, No. 11–CV–3163 JG CLP, 2012 WL 273698, at *9 (E.D.N.Y. Jan. 31, 2012) (declining to dismiss interference claim where employer repeatedly called the plaintiff about work and demanded that she complete certain tasks despite her explanation that she needed time to care for her father).

Defendant's demands of Plaintiff while he was on leave were more than *de minimus* requests for information or institutional knowledge. Defendant already had access to what it needed to avoid asking Plaintiff to perform tasks. (Doc # 26, Page ID# 212; 107:13-19). Despite that, Defendant requested Plaintiff perform substantive work while he was on leave. (*Id.* at Page ID# 212; 137:5-12; Page ID# 170; 95:14-23). Yet, Plaintiff was not compensated for it. (*Id.* at PageID# 175, 100:15-22).

Early on, Defendant asked Plaintiff to perform tasks including coordinating a tournament, attending events, and to work on the weekend. (*Id.* at Page ID# 169, 94:3-7). Toward the end of

his leave, as in *Folts*, Defendant asked Plaintiff to come into work because no one was available to cover his duties while his temporary replacement was out for his honeymoon. (*Id.* at Page ID# 170; 95:14-23).

### b. Defendant Interfered With Plaintiff's FMLA Entitlements By Significantly Changing His Schedule And Duties Upon His Return From Leave

"[D]enying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave." *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 476 (6th Cir. 2019). An essential entitlement under the FMLA is that an employee is entitled to return to his same or equivalent position and work the same or an equivalent schedule upon his return from leave. 29 U.S.C. § 2614(a)(1). An equivalent position is one that is "virtually identical," including the same working conditions and status. *See* 29 C.F.R. § 825.215(a). Additionally, the position "must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.*

Courts within the Sixth Circuit have found that a plaintiff may establish his *prima facie* case of FMLA interference by showing that the defendant changed the "rules" and "requirements" applicable to the plaintiff's employment after he availed himself of the FMLA leave to which he was entitled. *See Green v. Wal-Mart Stores, E., L.P.*, Case No. 3:11-CV-440, 2013 WL 3223629, at *4 (S.D. Ohio June 25, 2013) (evidence that after plaintiff took FMLA leave Defendant imposed progressive discipline on her more readily than prior to her leave and inconsistent with its past practices raised issue of fact sufficient to support prima *facie* FMLA interference claim).

Here, Plaintiff returned from his FMLA leave with significantly different duties than before he availed himself of his right to leave. (*Id.* at PageID# 281, 206:4-17). Defendant cautioned

Plaintiff that his right to reinstatement was conditioned upon his agreement to changes in his employment. (*Id.* at PageID# 209, 134:1-10). These changes were not "mere inconveniences" but instead fundamentally altered the position he had been performing prior to his leave. They included a start time of more than two hours earlier than before his leave despite Plaintiff having regular evening responsibilities and despite Defendant's awareness of Plaintiff's childcare obligations. (*Id.* at. PageID# 274, 199:23-24; PageID# 200:1-10).

Additionally, Defendant required Plaintiff to manage 41 failing students—which was many times the number assigned to others. (*Id.* at PageID# 397, 322:18-24; PageID# 402, 327:12-22). Also, Plaintiff was assigned instructional responsibilities with respect to multiple classes. (*Id.* at PageID# 266, 191:22-25; PageID# 269, 194:5-11). Plaintiff raised his concerns that these changes would impact his ability to perform his Athletic Director duties.  (*Id.* at PageID# 320, 245:7-11).

Plaintiff has established a *prima facie* case of FMLA interference.

### 2. Plaintiff Has Established A *Prima Facie* Case Of Retaliation Under The FMLA

To establish a *prima facie* case of FMLA retaliation, plaintiff must show that (1) he engaged in FMLA protected activity; (2) the employer knew of the protected activity; (3) the employer subsequently took adverse employment action against the employee; and (4) there was a causal connection between the FMLA activity and the adverse employment action. *Killian*, 454 F.3d at 556 (citing *Arban*, 345 F.3d at 404). Unlike FMLA interference, the employer's motive is relevant in FMLA retaliation claims. *Edgar*, 443 F.3d at 508.

Defendant disputes the first, third, and fourth elements of Plaintiff's FMLA retaliation claim. For reasons explained above, Defendant's argument that Plaintiff did not take FMLA leave must fail. *See* 29 U.S.C. §§ 2612(a)(1)(F) & 2620(a)(2)(A)-(B). Plaintiff will address the third and fourth elements in turn.

14

a. **Making Significant Changes To Plaintiff's Employment And Terminating Him Were Adverse Employment Actions**

The evidence shows that when Plaintiff returned from FMLA leave, Defendant significantly altered his work schedule and duties, and when he attempted to assert his FMLA entitlements, Defendant terminated Plaintiff's employment.

An adverse employment action is a "materially adverse change in the terms and conditions of [a plaintiff's] employment. *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). This definition includes firing and "reassignment with significantly different responsibilities[.]" *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

Employees who utilize FMLA leave are entitled to return to the same or equivalent position upon their return. 29 C.F.R. §§ 825.214 & 825.215. If the responsibilities and material aspects of the position are not equivalent, including status and duties, the employee has been denied a benefit under the FMLA, which is an adverse employment action. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007); *see also Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 378, 491 (D.N.J. 2002) (status and duties are part of the equivalence inquiry and a reasonable factfinder could determine that the positions were not equivalent). And even if the change in job responsibilities is viewed as a lateral move, "the change in job responsibilities support an inference of an adverse employment action." *Crawford v. JP Morgan Chase & Co.,* 531 F. App'x 622, 628 (6th Cir. 2013).

Defendant's alteration of Plaintiff's schedule was much more than a "shift change." *See Barnes v. Lantech*, No. 3:18-cv-00507-BJB, 2021 U.S. Dist. LEXIS 14256, at *10 (W.D. Ky. Jan. 26, 2021) (employee's FMLA retaliation claim failed because the change to his employment did not increase or alter the number of hours he worked). The significant change in Plaintiff's schedule altered the number of hours he was required to work. Prior to his leave, Defendant expected

15

Plaintiff to be at work at 9:50 a.m. (Doc # 26, PageID# 133, 58:1-9). After his leave, Defendant expected Plaintiff to report to work at 7:30. (*Id.* at PageID# 275, 200:15-20).

Additionally, Plaintiff was tasked with contacting/monitoring struggling students. (*Id.* at PageID# 397, 322:18-24; PageID# 402, 327:12-22). These requirements were not universal in nature as Defendant alleges. Plaintiff was assigned 6-10 times as many students as others. (*Id.*) Therefore, the changes to Plaintiff's employment were more than a "mere inconvenience."

Finally, terminating Plaintiff's employment is unquestionably an adverse employment action. *See Laster,* 746 F.3d at 727.

### b. Plaintiff Has Established Causal Connection

"To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). Plaintiff has pointed to sufficient evidence to raise an inference that his taking FMLA leave was the reason for the significant alteration to his job responsibilities and his leave coupled with his attempt to enforce his FMLA entitlements were the reasons for his termination.

Proximity between protected activity and an adverse action gives rise to an inference of causally connected retaliation. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283-84 (6th Cir. 2012). Here, the significant changes to Plaintiff's schedule and responsibilities were made upon Plaintiff's return from FMLA leave. (Doc # 26, PageID# 286, 211:5-9; Page ID# 281, 206:4-17). *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir.2008) (timing of a few days between protected activity and adverse employment action is suspicious enough to establish a causal connection).

16

In addition to temporal proximity, "where an employer treats an employee differently after [he] asserts [his] rights… than before [he] had done so, a retaliatory motive may be inferred." *Cantrell v. Nissan N. Am.*, 145 Fed. Appx. 99, 104-105 (6th Cir. 2005) (citing *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998)). Here, Defendant attempted to dissuade Plaintiff from utilizing leave, requested he work while on leave and made his reinstatement contingent upon him agreeing to changes upon his return. (Doc # 26, PageID# 169, 94:1-5; PageID# 170, 95:14-23; PageID# 209, 134:1-10). *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir.2008) (a threat of not being able to return to work if an employee utilizes his FMLA entitlements is evidence of retaliation). Additionally, when Plaintiff returned from leave, Plaintiff treated him differently by questioning his job performance for the first time. (Doc # 26, PageID# 245, 170:12-21). Lastly, Defendant never provided any rationale for why Plaintiff needed to come in over 2 hours earlier than prior to his leave or why he was tasked with monitoring 6-10 times as many students as others.

Plaintiff made clear that he was not refusing to do his job. (Doc # 26, PageIDs# 347-349, 272-274). Rather, he was attempting to assert his FMLA entitlements and wanted to engage in that dialogue before changes to his employment were made. (*Id.* at Page ID# 349, 274:3-9). Instead, Defendant suspended Plaintiff and later terminated him—all while admittedly never even taking the FMLA entitlements to reinstatement into consideration. (*Id.* at 16-25; Doc # 34, PageID# 718, 24:22-24; PageID# 719, 25:1-15; Page ID# 722, 28:8-20; Doc # 35, PageID# 786, 60:11-18).

Finally, "[Plaintiff] may succeed on [his] FMLA retaliation claim even if multiple factors contributed to [the employer]'s decision to discharge [him]; [he] is entitled to a jury so long as a reasonable one could find that both permissible and impermissible factors motivated the termination decision." *Wallner v. Hilliard*, 590 F. Appx. 546, 556 (6th Cir. 2014). Therefore,

because Plaintiff has raised sufficient evidence to establish that Defendant was at least motivated by Plaintiff's protected activity of utilizing FMLA leave and protesting the violation of his FMLA entitlements, a genuine dispute of material fact exists, and a jury must make the ultimate determination.

Plaintiff has established a *prima facie* case of FMLA retaliation.

### 3. Plaintiff Has Established That Defendant's Proffered Reasons For Plaintiff's Termination Are Pretextual

Employers must set forth a legitimate justification for their actions. *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017); *Edgar*, 443 F.3d at 508. If established, at the summary judgment stage the plaintiff is only required to rebut, but not disprove, the proffered rationale with some evidence tending to show the articulated reason is not the real one. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 509 (6th Cir. 2021); *Griffin*, 689 F.3d at 593. Plaintiff may do so by establishing that the Defendant's articulated basis was not sufficient to motivate his discharge and/or that the evidence suggests a discriminatory/retaliatory motive was more likely the real reason. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

In cases alleging retaliation, the same circumstances which established a causal connection between the Plaintiff's protected activity and his termination also serves as sufficient evidence to establish pretext. *Cantrell*, 145 Fed. Appx., at 107.

Here, Plaintiff's conduct did not warrant termination. The alleged insubordination was Plaintiff questioning changes to his job and asserting that they violated the FMLA. Defendant admits that it did not even consider the requirements of the FMLA when it made the decision to terminate Plaintiff.  (Doc # 34, PageID# 718, 24:22-24; PageID# 719, 25:1-15; Page ID# 722, 28:8-20; Doc # 35, PageID# 786, 60:11-18).

Additionally, there is substantial evidence that Defendant held a retaliatory motive. Defendant told Plaintiff no one had taken leave like this before. (Doc # 26, PageID# 399, 324: 1-4). Defendant discouraged Plaintiff from taking leave and then requested that he perform work while on leave. (*Id.* at PageID# 399, 324:3-7). Defendant conditioned Plaintiff's reinstatement on his agreement to significant changes to his employment. (*Id.* at PageID# 209, 134:1-10). There seemed to be no logical reason for some of the changes, including the earlier start time. Defendant also began questioning Plaintiff's job performance for the first time following his return from leave. (*Id.* at PageID# 245, 170:12-21). Lastly, Defendant admits it did not even consider the requirements of the FMLA when terminating Plaintiff. (Doc # 34, PageID# 718, 24:22-24; PageID# 719, 25:1-15; Page ID# 722, 28:8-20; Doc # 35, PageID# 786, 60:11-18). While there were changes made with respect to other's employment due to COVID, those changes are not comparable, particularly in light of there being no rationale for some of the changes to Plaintiff's work and the scrutiny of Plaintiff's work.

Plaintiff has presented sufficient evidence to at least rebut the asserted justification of Defendant for Plaintiff's termination. As such, he has established pretext.

### C.  Plaintiff Has Established Breach Of Contract

To establish a claim for breach of contract under Kentucky law, the plaintiff must show that (1) a contract existed; (2) that the defendant breached the contract; and (3) that he suffered injury as a result of the defendant's breach. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007).

The term "contract" includes every description of agreement or obligation, whether verbal or written. *See Frear v. P.T.A. Industries*, 103 S.W.3d 99, 105 (Ky.2003). Courts must be able to consider evidence outside of the written agreement, especially when the agreement between the

19

parties is subject to more than one reasonable interpretation and does not contain a merger or integration clause. *See Hall v. Rag-O*, E.D.Ky. No. 18-12-DLB-CJS, 2020 U.S. Dist. LEXIS 78882, at *23 (May 5, 2020).

Plaintiff was hired by Defendant to perform the role of Athletic Director. (Doc # 26, PageID# 121, 46:16-17; Doc # 34, PageID# 708, 14:11-14). Turner testified that the Athletic Director position was a full-time position and that he expected Plaintiff to spend all of his time performing Athletic Director responsibilities. (Doc # 35, PageID# 735, 9:19-21; Page ID# 747, 21:12-14; PageID# 748, 22:13-24; PageID# 749, 23:2-8). The understanding was that Plaintiff's job duties were those of Athletic Director. (*Id.* at PageID# 756, 30:19-24; PageID# 757, 31:1). Plaintiff was told that his teacher contract was a formality. (Doc # 26, PageID# 119, 44:17-19). All employees of Defendant sign teaching contracts, but some perform no teaching responsibilities. (*Id.* at PageID# 232, 157:19-25; PageID# 233, 158:1). Plaintiff did cover lunchroom duty, in school suspension and study hall. (*Id.* at PageID# 127, 52:11-18). These duties did not include classroom instruction. (*Id.*)

This was the agreement between Plaintiff and Defendant with respect to his job. Contrary to this agreement, Defendant now argues that Plaintiff was "first and foremost" a teacher. That is not consistent with the understanding between the parties. *See King v. Ohio Valley & Marine Ins. Co.*, 212 Ky. 770, 280 S.W. 127, 129 (1926) ("One of the essential elements of a contract, if not the most essential element, is the requirement that there be an agreement between the parties."). Defendant therefore breached its agreement with Plaintiff.

### D.  Title VII And The KCRA

Title VII prohibits discrimination in employment on the basis of an employee's race. *See* 42 U.S.C. § 2000e-2(a)(1). Discrimination claims brought under the KCRA are analyzed in the

20

same manner as Title VII. *See Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005); *see also Ford v. Gen'l Motors Corp.*, 305 F.3d 545, 552-53 & n.3 (6th Cir. 2002). Courts similarly employ the *McDonnell Douglas* burden shifting analysis for claims based on indirect evidence. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

### 1. Plaintiff Has Presented Evidence Sufficient To Establish A *Prima Facie* Case Of Discrimination On The Basis Of His Race Under Title VII And The KCRA.

A *prima facie* case of discrimination under Title VII requires the plaintiff to show that (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) he was treated differently than similarly situated employees and/or replaced by someone who is not a member of the protected class. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992); *see also Griffin*, 689 F.3d at 593. A plaintiff may establish the fourth element by pointing to evidence which suggests discriminatory intent considering common experience. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Disparate treatment is actionable under Title VII "when an employer treats [an employee] less favorably than others because of [his race]." *Huguley v. General Motors Corp.,* No. 93-2617, 52 F.3d 1364, 1995 U.S. App. LEXIS 9818, at *15 (6th Cir. May 1, 1995). The plaintiff's race needs only be a motivating factor to succeed in his claims. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988).

Defendant disputes each of Plaintiff's claims of race discrimination except that he was a member of a protected class. As to the second element and as explained above, Plaintiff was subject to adverse employment action when Defendant terminated his employment. *See Laster,* 746 F.3d at 727. Plaintiff will address the remaining third and fourth elements in turn.

21

### a. Plaintiff Was Qualified For His Position As Athletic Director

A plaintiff who alleges discrimination under Title VII (and the KCRA) must show that he was objectively qualified for the position and "was doing his job well enough to rule out the possibility that he was fired for inadequate job performance[.]" *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986).

Plaintiff has a Master's degree in Educational Leadership and Administration. (Doc # 26, PageID# 89, 14:1). He also has a Kentucky teaching certificate. (*Id.* at 10-18). Plaintiff was well qualified for the Athletic Director position. (*Id.* at PageID# 110, 35:11-16). Plaintiff had worked as an AD prior and had successfully worked as the AD at Ryle for a year and a half. (*Id.*) Defendant did not articulate concerns with Plaintiff's performance until after he took FMLA leave. (*Id.* at PageID# 245, 170:12-21).[2]

### b. Plaintiff Aas Treated Differently Than Similarly Situated Non-African American Employees Because Of His Race And Was Replaced By A Caucasian Individual

The Sixth Circuit explained in *Pierce v. Commonwealth Life Ins. Co.*, that to establish the comparators are similarly situated, the plaintiff was simply "required to prove that all *relevant* aspects of his employment situation were nearly identical to those of [comparators outside of the protected class's] employment situation." 40 F.3d 796 (6th Cir. 1994) (emphasis added) (internal quotes omitted).

As the only African-American administrator, Plaintiff was subject to racially discriminatory comments and treatment. (Doc # 26, PageID# 142, 67:20-22). Shafer told Plaintiff

---

[2] Before Plaintiff applied for his position with Defendant, Plaintiff's Ohio teaching license was suspended due to a student-lodged allegation. (Doc # 26, PageID# 90, 9-19). Plaintiff was fully eligible to have his license reinstated, but decided to not pursue it as he was searching for employment in other states. (*Id.* at PageID# 91, 16:9-13). Plaintiff spoke with the Kentucky licensing board who confirmed that after he participated in training, the discipline would not be placed on his record. (*Id.* at PageID# 91, 16:25; PageID# 92, 17:1-10; PageID# 93, 18:1-4). Plaintiff successfully completed his training shortly after. (*Id.*) Because Plaintiff did not have any discipline on his record, he did not disclose the allegation on his application with Defendant. (*Id.*)

in the presence of other staff that it looked like Shafer went to Sycamore and Plaintiff went to Princeton. (*Id.* at PageID# 376, 301:3-4). Shafer told Plaintiff that he wanted Plaintiff to report to Assistant Principal Tony Pastura because he was "his boy." (*Id.* at., PageID# 377, 302:11-17). Turner told Plaintiff that he learned how to talk to Black to non-white students. (*Id.* at PageID# 380, 305:15-24).

Turner told Plaintiff that he came off as "mean" after a Caucasian employee confronted Plaintiff about a position she wanted. (*Id.* at PageID# 138, 63:6-9). Even though she was the aggressor, Plaintiff was treated as if he was at fault. (*Id.*) Plaintiff reported difficulty with a member of the community who volunteered at various athletic events. (*Id.* at PageID# 405, 330:22-25; Page ID# 406, 331:1-5). Turner told Plaintiff to turn the other cheek. (*Id.* at PageID# 406, 331:1-5). His Caucasian peers were not similarly treated.

And after he was terminated, Defendant replaced Plaintiff with Keaton Belcher, a Caucasian male. (Doc # 34, PageID# 787, 61:13-17).

Plaintiff has established a *prima facie* case of race discrimination under Title VII and the KCRA.

## 2. Plaintiff Has Established That Defendant's Proffered Reasons For Plaintiff's Termination Are Pretextual

Plaintiff has produced enough evidence to establish that Defendant's decision to terminate Plaintiff was motivated by Plaintiff's race. Plaintiff's arguments regarding pretext with respect to his FMLA claims apply here as well. Additionally, the racially insensitive comments and the fact that Plaintiff was the only African-American administrative employee at Ryle and the only African American AD within Boone County Schools support Plaintiff's position.

23

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff Mario Kirkendall respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

*/s/ Jon B. Allison*
Kelly Mulloy Myers (KY Bar #83452)
Jon B. Allison-Admitted *Pro Hac Vice*
(OH Bar No. 0073955)
Trial Attorneys for Plaintiff
Freking Myers & Reul LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*kmyers@fmr.law*
*jallison@fmr.law*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2023, the foregoing was filed electronically via the Court's authorized electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Jon B. Allison*

24